UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MICHAEL J. HOUSE,

                            Plaintiff,

v.

GENERAL ELECTRIC CO., et al,

                            Defendant.

**MEMORANDUM AND ORDER**

23-cv-00071 (LDH) (LB)

---

LASHANN DEARCY HALL, United States District Judge:

Michael J. House ("Plaintiff"), proceeding pro se, commenced this action against General Electric Company, GE Aerospace (formerly known as GE Aviation), and CFM International, Inc. (collectively, the "GE Defendants"), American Airlines, Inc., Delta Air Lines, Inc., Eastern Airlines, LLC, JetBlue Airways Corporation, Southwest Airlines Co., and United Airlines Holdings, Inc. (collectively, the "Airline Customer Defendants"), and Spirit Airlines, Inc. ("Spirit"), asserting patent infringement claims stemming from the Defendants' development, distribution, and use of several fuel-efficient airplane jet engines. Plaintiff paid the filing fee to commence this action. The GE Defendants and Airline Customer Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint in its entirety. Defendant Spirit joins in the motion and asserts additional grounds for dismissal of the claims against it.

## BACKGROUND[1]

Plaintiff is an inventor and the holder of the patent for a "Multi All Fuel Processor System and Method of Pretreatment for All Combustion Devices," United States Patent No. 7,140,873 (the

---

[1] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order. Moreover, in deciding a motion to dismiss for failure to state a claim, a court may consider documents attached to and incorporated by reference into the complaint. *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (When ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (quotation marks and citation omitted)).

1

"'873 Patent"), which was filed on March 1, 1999, and issued on November 28, 2006. (Compl. ¶ 2, ECF No. 1; Compl. Ex. 1, ECF No. 1-2 at 2-18 ("'873 Patent").) The patented fuel processing procedure allows "all fuels to burn more cleanly and efficiently and [promotes] optimum combustion" for all combustion devices, "making it a universal process that can be adapted to all new and existing needs for total energy use." (Compl. ¶ 2; '873 Patent at 2.)

The '873 patent has a total of seven claims, including one independent claim and six dependent claims. ('873 Patent at 18.) Claim 1, the independent claim, reads:

> A process for the pre-treatment of fuels prior to combustion within a multi-chambered combustion device, comprising the steps of:
> 
> a) super pre-heating a fuel within a main chamber of said multi-chambered combustion device utilizing an internal electrical resistance induction element, said element located in a chamber within said multi-chambered combustion device thereby shielded from direct contact with said fuel;
> b) selectively increasing the pressure of said temperature-elevated fuel within said main chamber by controlling the flow of said fuel moving through said multi-chambered combustion device;
> c) keeping said elevated temperature constant within said multi-chambered combustion device utilizing said electrical resistance induction element, so as to further maintain an elevated pressure of said fuel; and
> d) transferring said temperature-elevated fuel into a combustion chamber, said combustion chamber utilizing an electrical discharge element for combustion, said combustion chamber in fluid communication with said main chamber of said multi-chambered combustion device.

Claims 2 through 7 are each dependent claims of Claim 1.[2]

---

[2] Claims 2 through 7 of the '873 Patent read:

> 2. The process of claim 1 wherein said fuel is selected from the group consisting of liquid fuel, gaseous fuel, solid fuel, and finely pulverized solid fuel.
> 
> 3. The process of claim 1 wherein said super pre-heating step (a) is carried out in a metal alloy enclosure cable of withstanding a high pressure and a high temperature.
> 
> 4. The process of claim 1 wherein said selectively increasing the pressure step (b), further comprises the steps of:
>    a) withdrawing said fuel from a storage vessel; and
>    b) directing said fuel utilizing a pump through an inlet fitting on said multi-chambered combustion device.

Plaintiff submitted his idea for the fuel-processing method to the GE Defendants in 1998 and alleges that, since then, the GE Defendants have systematically infringed upon the '873 Patent in their development and distribution of airplane jet engines GE9X, GEnx, CFM LEAP, CF6, CFM56, GE90, and CF34 (the "Accused Engines"). (Compl. ¶¶ 3, 21; Compl. Ex. 2, ECF No. 1-2 at 20-25 ("Mar. 20, 1998, Ltr. to GE").) Each of the Airline Customer Defendants have subsequently utilized one or more of the Accused Engines. (Compl. ¶¶ 32-42.) Although Plaintiff initially alleged that Defendant Spirit also utilizes one of the Accused Engines, CFM56 (Compl. ¶ 83), Plaintiff later acknowledged that Spirit does not utilize any of the GE engines and, instead, uses the engine PW1127G-JM, which is manufactured by International Aero Engines ("IAE"). (Pl.'s Opp. to Spirit Mot. to Dismiss, ECF No. 50 at 1; Spirit Reply to Mot. to Dismiss, ECF No. 59 at 1.)

To support his claims for infringement, Plaintiff attaches two claim charts "produced professionally by third-party consultants" with respect to engines GE9X and GEnx. (Compl. Ex. 3, ECF No. 1-2 at 27-44 ("GE9X Claim Chart"); Compl. Ex. 4, ECF No. 1-2 at 46-64 ("GEnx Claim Chart").) These charts compare each of the seven claims of the '873 Patent with language from articles and press releases about the GE9X and GEnx engines, touting the fuel-efficiency of the engines and describing some of the engines' general features. (*Id.*) To further support his

---

5. The process of claim 1 wherein said keeping said elevated temperature constant step (c) is aided by a multitude of check valves on said multi-chambered combustion device.

6. The process of claim 1 wherein said transferring step (d) is achieved by a pump capable of performance at a high pressure and a high temperature.

7. The process of claim 1 wherein a tungsten porcelain electrical resistance induction heating element is responsible for said super pre-heating of said fuel.

('873 Patent at 18.)

3

claims, Plaintiff also attaches similar articles and press releases, without any comparison chart, regarding the engines GE90 (Compl. Ex. 5, ECF No. 1-2 at 66-67 ("GE90 Article")), CFM LEAP (Compl. Ex. 6, ECF No. 1-2 at 69-75; Compl. Ex. 7, ECF No. 1-2 at 77-84 ("CFM LEAP Articles")), CFM56 (Compl. Ex. 8, ECF No. 1-2 at 88-91 ("CFM56 Article")), CF6 (Compl. Ex. 9, ECF No. 1-2 at 93-96 ("CF6 Article")), and CF34 (Compl. Ex. 10, ECF No. 1-2 at 98-99 ("CF34 Article")). Beyond these attachments, Plaintiff makes no additional allegations in his complaint about how the Accused Engines infringe upon the claims in the '873 Patent.

Plaintiff alleges that each of the Defendants "makes, markets, produces, distributes, uses, offers [t]o sell, and/or sells" the Accused Engines and, as such, that the Defendants have each directly, indirectly, and willfully infringed on the '873 Patent in violation of 35 U.S.C. § 271. (Compl. ¶¶ 44-92.) Plaintiff seeks compensation for the injuries that he sustained as a result of the infringement of the '873 Patent, as well as treble damages for the willful infringement of his patent. (*Id*. ¶¶ B-C.)

## STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Iqbal*, 556 U.S. at 678. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [c]ourt must merely determine whether the

4

complaint itself is legally sufficient, and in doing so, it is well settled that the [c]ourt must accept the factual allegations of the complaint as true." *Id*. (internal citation omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)).

## DISCUSSION

Plaintiff alleges that Defendants violated 35 U.S.C. § 271(a) by directly infringing upon the '873 Patent. Subsection (a) of 35 U.S.C. § 271 states:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

The Federal Circuit has held that a plaintiff is likely to plausibly state a claim for infringement if the complaint contains "(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)). Although "[a] plaintiff is not required to plead infringement on an element-by-element basis" to succeed at the pleading stage, the complaint must "place the alleged infringer on notice of what activity is being

5

accused of infringement" and "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021) (internal citations and quotations omitted).  The extent to which the factual allegations of a complaint plausibly articulate how a patent has been infringed depends on "a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id*. at 1353.  "[F]ailure to allege facts that plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss." *Bill of Lading*, 681 F.3d at 1342.  It is not sufficient for a plaintiff to "recit[e] the claim elements and merely conclud[e] that the accused product has those elements." *Bot M8 LLC*, 4 F.4th at 1353.  Moreover, a plaintiff cannot state a plausible claim if "the factual allegations are actually *inconsistent* with and contradict infringement." *Id.* at 1354 (emphasis in original).

      Defendants argue that Plaintiff's direct infringement claims fail because (1) Plaintiff does not provide any allegations explaining how the engines CFM LEAP, CF6, CFM56, GE90, and CF34 infringe on the '873 Patent and (2) the claim charts for the engines GE9X and GEnx do not suggest that the any of the steps articulated in the '873 Patent were performed by these engines, or that the performance of these steps could be inferred based on the comparisons in the claim charts.  (Def.'s Mot. to Dismiss at 9-14, ECF No. 55.)  The Court agrees.  That is, even with the most liberal interpretation of the Plaintiff's allegations, Plaintiff fails to plausibly state a claim for direct infringement of the '873 Patent on behalf of any of the Defendants.

      In his complaint, Plaintiff cites to language from articles and press releases stating, for example, that the Accused Engines have improved fuel efficiency using techniques like "pre-

mixing fuel and air before they are burned in the combustor," "maximiz[ing] airflow through the core," using "high pressure compressor[s], lean-burning combustor[s], and lightweight durable composite materials" that can withstand extremely high temperatures, improving cooling technology with new fan blades, and incorporating sensors that measure the pressure and temperature in the engine, among other things.  (*See, e.g.* GE9x Claim Chart at 30, 32, 36; GEnx Claim Chart at 49, 51, 55; CFM LEAP Articles at 72, 79.)  However, these allegations do not support a plausible inference that the Accused Engines actually perform any of the processes laid out in the '873 Patent, such as the "pre-heating [of] fuel within a main chamber of [a] multichambered combustion device," the "selective[] increasing of the pressure of the temperature-elevated fuel," or utilizing electrical elements to "keep the elevated fuel temperature constant" and to "transfer the heated fuel to a combustion chamber."  (*See* '873 Patent at 18.)  The Federal Court's holding in *Bot M8 LLC v. Sony Corp. of Am.* is instructive here.  4 F.4th at 1353-56.

In *Bot M8*, the plaintiff held a patent for a "mutual authentication program for video games," which involved storing gaming information and a mutual authentication program together on the same memory board.  4 F.4th at 1354.  Bot M8 alleged that Sony's PS4 console infringed on this patent and, to support its claim, Bot M8 simply pointed to four different storage components of the PS4, recited the claim elements of its patents, and made conclusory assertions that that the PS4 "contained multiple storage media and multiple authentication programs." *Id*. at 1355.  The court held that these allegations were insufficient to support a plausible inference of infringement because the allegations "merely track[ed] the claim language, and d[id] not plausibly allege that gaming information and a mutual authentication program [were] stored together on the same memory." *Id*.  Moreover, the court held that, although the plaintiff

7

"point[ed] to different storage components in the allegedly infringing devices, it never sa[id] which one or ones satisf[ied] the mutual authentication limitation." *Id*. Here, Plaintiff alleges that Defendants infringed on a method patent, which requires the pleading of facts that, "when considered in their entirety and in context, lead to the commonsense conclusion that a patented method is being practiced. *Bill of Lading*, 681 F.3d at 1343. Plaintiff fails to do so.

With regard to the engines CFM LEAP, CF6, CFM56, GE90, and CF34, Plaintiff's failure to make a single allegation that connects any of the claim elements of the '873 Patent to any elements of these engines is fatal to his infringement claim. Even with regard to the engines GE9x and GEnx, for which Plaintiff includes charts comparing language from articles promoting these engines with the process articulated in the '873 Patent, Plaintiff fails to support a plausible claim of infringement. Much like the plaintiff in *Bot M8*, Plaintiff's charts simply recite each step laid out in the '873 Patent and then highlight elements of the GE9x and GEnx engines without any further allegations regarding how those elements are similar, let alone infringing, on Plaintiff's patented process.[3] (*See, e.g.* GE9x Claim Chart at 30, 32, 36; GEnx Claim Chart at 49, 51, 55.) As such, because Plaintiff's allegations do not support a plausible inference of infringement, Plaintiff's claims against Defendants for direct infringement of the '873 Patent must be dismissed.

---

[3] Plaintiff's allegations of direct infringement with respect to the GE9X engine fail for the additional reason that at least one of the highlighted elements of the GE9X is inconsistent with infringement of the '873 Patent. In *Bot M8*, the court held that, with respect to one of their patents, the plaintiff "actually allege[d] *away* from infringement by asserting . . . an allegation that is inconsistent with Bot M8's infringement theory." *Bot M8*, 4 F.4th at 1354. There, the plaintiff's patent required that a game program and an authentication program be stored on the same board, but separate from the motherboard. *Id*. However, in their complaint, the plaintiff alleged that the authentication program for the PS4 was located on the motherboard itself. *Id*. The court found that this inconsistency alone was fatal to the plaintiff's infringement claim. *Id*. In the instant action, Claim 3 of the '873 Patent states that the "super pre-heating step [of Claim 1] is carried out in a metal alloy enclosure [capable] of withstanding [] high pressure and high temperature." (*See* '873 Patent at 18.) However, one article that Plaintiff highlights regarding the GE9X engine states that the GE9X engine utilizes a "ceramic matrix composite" that is "more heat resistant than metal alloys." (GE9X Claim Chart at 40.) This inconsistency defeats Plaintiff's claim with respect to the GE9X.

In addition to his direct infringement claim, Plaintiff attempts to hold Defendants liable for indirect and willful infringement. As a threshold matter, "[i]t is axiomatic that there can be no indirect infringement without an underlying act of direct infringement." *Bill of Lading*, 681 F.3d at 1333 (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)) (internal quotations and alterations omitted). Undoubtedly, the same applies to a claim for willful infringement. *See, e.g., Autronic Plastics, Inc.* v. *Apogee Lighting, Inc.*, No. 19-CV-6268, 2021 WL 5965715, at *5 (E.D.N.Y. Dec. 16, 2021); *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 449 (E.D.N.Y. 2012). Because Plaintiff fails to state a claim that the Accused Engines directly infringe upon the '873 Patent, his claims that Defendants indirectly[4] or willfully infringed on the '873 Patent through the development, distribution, or use of the Accused Engines also necessarily fail.[5]

---

[4] Plaintiff's indirect infringement claims further fail because Plaintiff does not sufficiently allege that Defendants knew that the development, distribution, or use of the Accused Engines infringed upon, or contributed to the infringement of, the '873 Patent, nor does Plaintiff plausibly allege that any Defendants specifically intended to induce infringement of the '873 Patent by developing or using those engines. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." (quotations and citations omitted)); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) ("[C]ontributory infringement requires only proof of a defendant's knowledge, not intent, that his activity cause[s] infringement."). Plaintiff's only nonconclusory allegation related to the knowledge or intent of the Defendants is the allegation that Plaintiff submitted his fuel-processing idea to the GE Defendants in 1998, before the patent was filed on March 1, 1999 and issued on November 28, 2006. (*See* Compl. ¶ 3.) This allegation is not sufficient to state a plausible claim that the GE Defendants, let alone the Airline Customer Defendants, were aware that the Accused Engines infringed on the '873 Patent or that they intended to induce infringement of the '873 Patent by developing, distributing, and using the Accused Engines.

[5] The claims against Spirit are dismissed on the additional ground that Plaintiff admits that Spirit does not utilize any of the Accused Engines at issue in this case. (Pl.'s Opp. to Spirit's Mot. to Dismiss at 1; Spirit Reply in Supp. of Mot. to Dismiss at 1.) Plaintiff cannot state a claim for infringement where the defendant does not utilize the infringing product in question. *See, e.g., Colida v. Sony Corp. of Am.*, No. 04-CV-2093, 2004 WL 1737835, at *2 (S.D.N.Y. Aug. 2, 2004) (dismissing patent claim under Rule 12(b)(6) after defendant asserted that it did not sell or use infringing phone, and evidence submitted by the plaintiff failed to demonstrate otherwise).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's complaint is DISMISSED.  Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)).  But a court has inherent power to dismiss without leave to amend or replead where amendment would be futile. *Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011).  Because the Court concludes that leave to amend would be futile, the Court declines to grant Plaintiff leave to amend his complaint.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and *in forma pauperis* status is therefore denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment, mark this action closed, and mail a copy of this order to the *pro se* Plaintiff.

SO ORDERED.

Dated: Brooklyn, New York  /s/LDH
       September 30, 2024  L A SHANN D E ARCY HALL
                                      United States District Judge